UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

| | |
|---|---|
| **BYD (H.K.) CO., LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | Case No. 23-00221<br><br>Before: Unassigned |

## COMPLAINT

Plaintiff, BYD (H.K.) Co., Ltd. ("BYD HK"), by and through counsel, brings this Complaint against the United States of America, and alleges as follows:

## DETERMINATION TO BE REVIEWED

1. Plaintiff contests the final determination of the U.S. Department of Commerce ("Commerce") that crystalline silicon photovoltaic ("CSPV") cells, whether or not assembled into modules, are being exported from Cambodia to the United States in circumvention of the antidumping duty and countervailing duty ("AD/CVD") orders (the "*Solar I* Orders") on CSPV cells, whether or not assembled into modules, from the People's Republic of China ("China") under 19 U.S.C. § 1677j(b). *See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) (final scope determination and final affirmative determinations of circumvention with respect to Cambodia, Malaysia, Thailand, and Vietnam) ("*Final Determination*") and accompanying Memorandum from James Maeder to Lisa W. Wang, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic*

1

*Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Issues and Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Cambodia* (Aug. 17, 2023) ("Final IDM").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers on the U.S. Court of International Trade jurisdiction to review, *inter alia*, final determinations issued by Commerce under Section 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2)(A)(ii); 19 U.S.C. § 1516a(a)(2)(B)(vi).

## NAME AND STANDING OF PLAINTIFF

3. BYD HK is a foreign exporter of CSPV cells, whether or not assembled into modules, from Cambodia. BYD HK participated in the circumvention inquiry that led to the challenged *Final Determination* through the submission of argument and factual information. Commerce selected BYD HK as a respondent party subject to individual examination in the circumvention inquiry that is subject to this appeal. BYD HK is therefore an interested party and party to the proceeding within the meaning of Section 771(9)(A) of the Act, 19 U.S.C. § 1677(9)(A), and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4. Section 516A(a)(2)(A)(ii) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(vi), the summons must be filed within thirty (30) days of the mailing date of the contested determination, and the complaint must be filed within thirty (30) days thereafter. 19 U.S.C. § 1516a(a)(2)(A)(ii). Commerce rendered the *Final Determination* on August 17, 2023, and the *Final Determination* was published in the

*Federal Register* on August 23, 2023.  88 Fed. Reg. 57,419.  Commerce mailed the *Final Determination* to BYD HK's counsel via FedEx on September 20, 2023.  On October 17, 2023, within 30 days from Commerce's September 20, 2023 mailing of the *Final Determination*, BYD HK filed a summons with this Court.  On November 16, 2023, within thirty (30) days thereafter, BYD HK filed this Complaint.  This action is thus timely brought.

## STANDARD OF REVIEW

5. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1677j to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

6. BYD HK is a trading agent registered in Hong Kong and is 100% owned by BYD Company Limited, a manufacturing conglomerate.  Since 2019, BYD HK has worked with certain toll processors in Cambodia to manufacture solar products in Cambodia.  During Commerce's above-mentioned circumvention inquiry, BYD HK worked with three toll processors located in Cambodia.  These processors had facilities and manufacturing lines in Cambodia where, pursuant to an arrangement with BYD HK, they would take raw materials and transform them into functioning solar cells, then solar modules, for BYD HK to eventually export and sell.

7. On April 1, 2022, Commerce initiated country-wide circumvention inquiries to determine whether imports of CSPV solar cells and modules completed in Cambodia, Malaysia, Thailand, or Vietnam using parts and components from China were circumventing the *Solar I* Orders.  *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 19,071 (Dep't Commerce Apr. 1, 2022) (initiation of circumvention inquiry on the antidumping duty and countervailing duty orders).  Commerce

initiated the inquiry following a February 8, 2022 request by Auxin Solar Inc. ("Auxin"), a small domestic CSPV module assembler.

8. Commerce initiated and subsequently conducted this circumvention inquiry, notwithstanding valid objections from respondents (maintained throughout the proceeding) that the inquiry contradicted long-established rulings by both Commerce and other agencies concerning the processing of solar cells. In particular, respondents objected that Commerce (and other U.S. government agencies) have consistently found that the formation of a positive-negative ("p/n") junction on a polysilicon wafer is the critical process that establishes the essential character of a solar cell and module, and the location where the p/n junction is formed therefore establishes the country of origin of the cell and module. Respondents argued that it is inherently contradictory and legally impermissible for Commerce to find that the same processes are also "minor or insignificant" for purposes of the circumvention statute.

9. On March 31, 2022, Commerce issued Quantity and Value Questionnaires to producers and exporters of CSPV products from Cambodia. *See* Memorandum from James Maeder to Lisa W. Wang, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Cambodia*, Case No. A-570-979 (Anti-circumvention Inquiry, Cambodia–2022) (Dec. 1, 2022) ("Prelim. IDM") at 2. On the basis of the Quantity and Value Questionnaire responses, Commerce on May 12, 2022 selected BYD HK and New East Solar (Cambodia) Co., Ltd. as "mandatory respondents" subject to individual examination. Commerce then issued circumvention questionnaires to both selected companies. *Id.*

10. BYD HK fully cooperated as a mandatory respondent throughout the course of the circumvention proceeding. BYD HK timely and completely responded to Commerce's numerous questionnaires and requests for information issued to BYD HK between March 2022 and January 2023. Commerce thereafter conducted on-site verification of BYD HK's submissions from February 6, through February 9, 2023. Commerce found no significant discrepancies between BYD HK's reported information and the information presented at verification. Memorandum from Jose Rivera to The File, *Verification of the Questionnaire Responses of BYD (H.K.) Co., Ltd. in the Circumvention Inquiry of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China - with Respect to Cambodia*, Case No. A-570-979 (Anti-circumvention Inquiry, Cambodia–2022) (Mar. 15, 2023).

11. On June 9, 2022, the President of the United States declared an emergency to exist with respect to the threats to the availability of sufficient electricity generation capacity to meet expected customer demand and instructed Commerce to waive any *Solar I* circumvention tariff requirements for a period of twenty four months, in the event of affirmative findings. *Declaration of Emergency and Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules From Southeast Asia*, 87 Fed. Reg. 35,067 (Executive Office of the President June 9, 2022). President Biden determined that "[i]mmediate action is needed to ensure in the interim that the United States has access to a sufficient supply of solar modules to assist in meeting our electricity generation needs." *Id*. at 35,068. On September 12, 2022, Commerce added Part 362 to its regulations to implement the President's instructions. *Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Dep't Commerce Sept. 16, 2022) ("*Final Rule*"). In promulgating this *Final Rule*, Commerce determined that "the record supports the conclusions of the President

that an electricity supply emergency exists in the United States, and that to address the energy supply emergency with solar energy technology, the United States must rely, in part, on imported solar modules for the immediate future." *Id*. at 56,873.

12. Commerce reached preliminary affirmative determinations of circumvention on December 1, 2022, on a country-wide basis and with respect to BYD HK. *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China.*, 87 Fed. Reg. 75,221 (Dep't Commerce Dec. 8, 2022) (preliminary affirmative determinations of circumvention with respect to Cambodia, Malaysia, Thailand, and Vietnam) ("*Preliminary Determination*").  The governing statute, 19 U.S.C. § 1677j(b), only permits Commerce to render affirmative determinations if it finds that, among other factors: (1) the process of assembly or completion in Cambodia is "minor or insignificant"; (2) the value of the merchandise produced in China is a significant portion of the total value of the merchandise exported from Cambodia to the United States; and (3) action is "appropriate" to prevent evasion of the AD/CVD Orders.  The statute additionally instructs the agency how to determine whether a process is "minor or insignificant"—that is, Commerce must assess: (A) the level of investment in Cambodia; (B) the level of R&D in Cambodia; (C) the nature of the production process in Cambodia; (D) the extent of production facilities in Cambodia; and (E) whether the value of the processing performed in Cambodia represents a small proportion of the value of the merchandise imported into the United States.

13. In the *Preliminary Determination*, Commerce found that certain factors weighed in favor, and other factors weighed against, Commerce's ultimate finding that the operations taking place in Cambodia were "minor or insignificant" and therefore those operations were circumventing the *Solar I* Orders.  Commerce first found broadly that "the production performed

by the respondents in the third country is not minor or insignificant" and that this "does not weigh in favor of finding circumvention." Prelim. IDM at 18. Commerce also found that the value-add contributed by the production process in Cambodia accounted for substantially more than a third of the total value of the finished products. *See* Memorandum from Jose Rivera to The File, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic from China – Circumvention Inquiry with Respect to Cambodia: Preliminary Analysis Memorandum for BYD (H.K.) Co., Ltd.*, Case No. A-570-979 (Anti-circumvention Inquiry, Cambodia–2022) (Dec. 1, 2022) ("Prelim. BYD Analysis Mem.") at 4. Commerce puzzlingly found, however, that this relatively large value-added figure "weigh[ed] in favor of finding circumvention." *Id.*

14. Commerce also found (i) that because BYD HK had made "no investment in Cambodia related to solar cells and modules" the level of investment in Cambodia weighed in favor of finding circumvention; (ii) that the amount of research and development by BYD HK in Cambodia was minor or insignificant; and (iii) that the extent of BYD HK's production facilities in Cambodia was minor. In each case, Commerce considered only the activities undertaken by BYD HK in Cambodia and ignored entirely the substantial production, investments, and other activities by the tollers actually undertaken in Cambodia. *See* Prelim. IDM at 13–19; Prelim. BYD Analysis Mem. at 3–4. Commerce also considered that trade patterns, the presence of affiliated parties, and the volumes of shipments from China to Cambodia weighed in favor of circumvention. Prelim. IDM at 20–21; Prelim. BYD Analysis Mem. at 5–7. On the basis of these findings, Commerce preliminarily determined that the operations taking place in Cambodia were "minor and insignificant", and that BYD HK was circumventing the *Solar I* Orders.

15. In conducting its analysis of the level of investment in Cambodia, Commerce determined to compare the level of investment in Cambodia and the level of investment of BYD HK's Chinese affiliates on an absolute rather than on a per-megawatt basis. Prelim. IDM at 14; Prelim. BYD Analysis Mem. at 3; *see also* Final IDM at 18–19. Commerce adhered to this methodology for the *Final Determination* despite arguments from interested parties that comparisons on an absolute level fail to take into account the relative sizes of the markets served by the Cambodian operations on the one hand and BYD HK's Chinese affiliates on the other and are therefore distortive. Final IDM at 18.

16. To determine under 19 U.S.C. § 1677j(b)(1)(D) whether the value of the merchandise produced in China was a "significant portion" of the value of the merchandise that was exported to the United States, Commerce chose to value Chinese-produced inputs that were used to produce solar cells and modules in the inquiry country based on "surrogate values" derived from a third country, rather than the actual amounts paid for the inputs. Prelim. BYD Analysis Mem. at 4; Final IDM at 44–45. BYD HK objected that this methodology distorted and overstated the significance of the Chinese inputs. Prelim. BYD Analysis Mem. at 4; Final IDM at 44–45 (citing Brief from Hogan Lovells US LLP to the U.S. Department of Commerce, *2022 Circumvention Inquiry of Antidumping Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Second Tranche Case Brief*, Case No. A-570-979 (Anti-circumvention Inquiry, Cambodia–2022) (Mar. 24, 2023) at 17).

17. On August 17, 2023, Commerce issued its *Final Determination*. Commerce affirmed its findings with respect to the statutory factors provided at 19 U.S.C. § 1677j and continued to find that "BYD HK's process of assembly or completion in Cambodia of the solar

modules shipped to the United States [was] minor or insignificant." Final IDM at 61, 67. In addition, the *Final Determination* asserted that Commerce made a finding of "appropriateness" under the circumvention statute and that Commerce found action under the circumvention statute to be "appropriate" in light of Commerce's other finding that the criteria for circumvention were met. *Id.* at 76. Commerce thus found that BYD HK had circumvented the *Solar I* Orders and issued affirmative country-wide and company-specific findings of circumvention with respect to Cambodia and BYD HK. Commerce's *Final Determination* significantly expanded the scope of the *Solar I* Orders to cover cells whose positive-negative ("p/n") junctions are formed outside of China.

## STATEMENT OF CLAIMS

### COUNT ONE

**Commerce's Finding of "Minor or Insignificant Processing" as to BYD HK Despite Finding That the Process of Assembly or Completion in Cambodia is not Minor or Insignificant Is Not Supported by Substantial Evidence or in Accordance with Law**

**Section 781 of Tariff Act of 1930, as amended, 19 U.S.C. § 1677j**

18. Plaintiff hereby incorporates by reference paragraphs 1 through 17 of this Complaint.

19. Section 781 of the Act only permits Commerce to make a finding of circumvention if the "process of assembly or completion [in Cambodia] is minor or insignificant." 19 U.S.C. § 1677j(b)(1)(C). The statute also directs Commerce to "take into account" certain factors in analyzing whether such process is minor or insignificant. 19 U.S.C. § 1677j(b)(2).

20. Commerce found in both its *Preliminary Determination* and its *Final Determination* that "record evidence shows that the nature of the production process in Cambodia for solar cells and modules is significant." Prelim. IDM at 22; Final IDM at 32. Under any

9

ordinary consideration of the facts, that statement would be the end of Commerce's inquiry into whether the "process of assembly or completion [in Cambodia] is minor or insignificant." Yet, Commerce went on to make the contradictory finding that these same production processes taking place in Cambodia that Commerce had described as "significant", were also "minor and insignificant." Commerce's findings in this regard are internally contradictory, unsupported by substantial evidence, and otherwise not in accordance with law.

## COUNT TWO

**Commerce's Finding That Value-Added Exceeding One-Third of Total Value Supported an Affirmative Circumvention Finding Was Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

**Section 781 of Tariff Act of 1930, as amended, 19 U.S.C. § 1677j**

21. Plaintiff hereby incorporates by reference paragraphs 1 through 17 of this Complaint.

22. The statute directs Commerce to take into account, as part of its assessment of whether the process undertaken in Cambodia is "minor or insignificant," "whether the value of the processing performed in [Cambodia] represents a small proportion of the value of the merchandise imported into the United States." 19 U.S.C. § 1677j(b)(2)(E).

23. In the *Final Determination*, Commerce found that the value added from processing performed in Cambodia represented more than a third of the value of the finished solar modules imported into the United States. In the face of this finding, Commerce determined that this value-added amount "[n]evertheless . . . weighs in favor of finding circumvention."

24. Commerce's finding that the value added in Cambodia, amounting to greater than a third of the total value of the imported goods, "weigh[ed] in favor of finding circumvention" (*i.e.*, represents a small proportion of the value of the merchandise imported into the United States)

10

is unreasonable, is contrary to the language of the statute, is unsupported by substantial evidence, and is otherwise not in accordance with law.

## COUNT THREE

**Commerce's Use of Surrogate Values to Calculate the Value Added in Cambodia is Unsupported by Substantial Evidence or Otherwise Not in Accordance with Law**

**Sections 773(c)(1) and 781 of Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677b(c), 1677j**

25.  Plaintiff hereby incorporates by reference paragraphs 1 through 17 of this Complaint.

26.  The statute directs Commerce to take into account, as part of its assessment of whether the process undertaken in Cambodia is "minor or insignificant," "whether the value of the processing performed in [Cambodia] represents a small proportion of the value of the merchandise imported into the United States." 19 U.S.C. § 1677j(b)(2)(E).

27.  In implementing this directive, Commerce collected data on the value of inputs as they arrive in Cambodia, then compared the total value of those inputs to the value of the finished goods when they were exported from Cambodia. The difference between these two values is the value added in Cambodia.

28.  BYD HK reported complete cost information for Chinese inputs that were consumed through the Cambodian manufacturing operation that reflected the actual purchase value of raw materials into the Cambodian market. *See* Response from Hogan Lovells US LLP to the U.S. Department of Commerce, *2022 Circumvention Inquiry of Antidumping Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Response to Third Supplemental Questionnaire*, Case No. A-570-979 (Anti-circumvention Inquiry, Cambodia–2022) (Oct. 12, 2022) at Exhibits S3-3-A and S3-3-B. Rather than using this actual cost information from BYD HK's cost records, Commerce elected to instead

11

use "surrogate values" for the inputs (i.e., values for the inputs imported into third country markets) as derived under Commerce's non-market economy ("NME") authority which has no direct application to circumvention cases.

29. Commerce's use of surrogate values under the NME methodology to calculate the value of Chinese inputs is unsupported by substantial evidence and contrary to law. Using surrogate values to value inputs into a market economy country is neither appropriate nor permissible under the statute. Commerce's use of this methodology was therefore unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT FOUR

**Commerce's Failure to Consider the Activities of the Tollers in Cambodia in Making its Findings on the Levels of Investment and Research and Development and the Extent of Production Facilities in Cambodia Was Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

**Section 781 of Tariff Act of 1930, as amended, 19 U.S.C. § 1677j**

30. Plaintiff hereby incorporates by reference paragraphs 1 through 17 of this Complaint.

31. In determining whether the process undertaken in Cambodia is "minor or insignificant," Section 781 of the Act directs Commerce to take into account the "level of investment in [Cambodia]," "level of research and development in [Cambodia]," and the "extent of production facilities in [Cambodia]", along with two other enumerated factors. 19 U.S.C. § 1677j(b)(2).

32. BYD HK engaged unaffiliated toll processors to carry out significant and important manufacturing operations in Cambodia on BYD HK's behalf to transform various raw materials into solar cells, then solar modules. In the *Final Determination*, Commerce unlawfully ignored the investments, research and development, and production facilities of these Cambodian tollers

for purpose of its analysis, instead considering only the investments, research and development, and production facilities of BYD HK in Cambodia. In doing so, Commerce's *Final Determination* unreasonably and unlawfully ignored entirely material evidence on the record addressing these two statutory prongs. This approach was contrary to the statute, unsupported by substantial evidence, and otherwise not in accordance with law.

## COUNT FIVE

### Commerce's Analysis of Investment Data on an Absolute Basis was Distortive and was Not Supported by Substantial Evidence or Otherwise in Accordance with Law

### Section 781 of Tariff Act of 1930, as amended, 19 U.S.C. § 1677j

33. Plaintiff hereby incorporates by reference paragraphs 1 through 17 of this Complaint.

34. In determining whether the process undertaken in Cambodia is "minor or insignificant," Section 781 of the Act directs Commerce to take into account the "level of investment in [Cambodia]," along with four other enumerated factors. 19 U.S.C. § 1677j(b)(2)(A).

35. Commerce elected to compare the level of investment in Cambodia and the level of investment of BYD HK's Chinese affiliates on an absolute rather than on a per-megawatt basis. This approach, however, was unreasonable and highly distortive in that it failed to take into account the vastly different sizes of the markets served by the Cambodian operations on the one hand and BYD HK's Chinese affiliates on the other. Failing to consider the size of China's industry when comparing investments in Cambodia to China resulted in an unreasonably distortive comparison. Commerce's failure to appropriately evaluate investment levels on a per-unit basis was also contrary to legislative history and Commerce's past practice.

36. As a result, Commerce's findings regarding the relative levels of investment in Cambodia were unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT SIX

**Commerce Failed to Demonstrate that an  
Affirmative Finding of Circumvention Is "Appropriate" Within the Meaning of the Statute Causing its Analysis to be Incomplete and Not in Accordance with Law**

**Section 781 of Tariff Act of 1930, as amended, 19 U.S.C. § 1677j**

37. Plaintiff hereby incorporates by reference paragraphs 1 through 17 of this Complaint.

38. In order for Commerce to reach an affirmative circumvention finding, the governing statute requires Commerce to "determine[] that action *is appropriate* . . . to prevent evasion of such order or finding." 19 U.S.C. § 1677j(b)(E) (emphasis added). This statutory factor of appropriateness is separate and distinct from the other elements required for an affirmative finding.

39. In the *Final Determination*, Commerce concluded that an affirmative finding was "appropriate" because Commerce found the other statutory factors to support an affirmative finding. Final IDM at 76–77. Commerce's reasoning is impermissibly circular. Congress mandated that "appropriateness" is a separate and independent statutory factor to be considered by Commerce. Commerce ignored this dictate in the *Final Determination* by conflating its other statutory findings with this factor and failing to conduct the independent consideration required by the statute. Commerce's finding with respect to appropriateness was therefore unsupported by substantial evidence and otherwise not in accordance with law.

**COUNT SEVEN**

**Commerce Inappropriately Expanded the Scope of the *Solar I* Orders to Disregard Its and other Government Agencies' Consistent and Established Findings that the Formation of the P/N Junction Is the Critical Step in the Manufacture of Solar Cells**

**Section 781 of Tariff Act of 1930, as amended, 19 U.S.C. § 1677j**

40.  Plaintiff hereby incorporates by reference paragraphs 1 through 17 of this Complaint.

41.  The *Final Determination* impermissibly expanded the scope of the *Solar I* Orders to cover CSPV cells whose p/n junctions are formed outside of China. Throughout its decade-long administration of the *Solar I* Orders, Commerce (and other U.S. government agencies) consistently have found that formation of a positive-negative ("p/n") junction on a polysilicon wafer is the critical process that establishes the essential character of a solar cell and module and the location where the p/n junction is formed therefore establishes the country of origin of the cell and module. 1/ Accordingly, prior to the *Final Determination* Commerce had always administered the *Solar I* Orders so that that CSPV cells with p/n junctions formed outside of China were not considered to be products of China for purposes of the *Solar I* Orders. Commerce's *Final*

---

1/    *See, e.g.*, Memorandum from Lauren Caserta to James Maeder, *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells from the People's Republic of China: ET Solar Inc.*, Case Nos. A-570-979 & C-570-980 (Scope Inquiry: ET Solar) (Jun. 15, 2021) at 7 ("Commerce finds that the process of imbuing silicon wafers with a p/n junction results in the creation of solar cells . . . capable of converting sunlight into electricity via the photovoltaic effect."); Customs Ruling HQ H301813 (May 24, 2019) available at https://www.customsmobile.com/rulings/docview?doc_id=HQ%20H301813&highlight=HQ%20H301813 ("The solar cells have already undergone the substantial processing prior to being shipped to India, including the process known as 'doping,' in which phosphorous is diffused into a thin layer of the wafer surface to create a negatively charged phosphosilicate layer terminating in a positive-negative, or P/N junction. This is a critical partition in the functioning of a solar cell. After the P/N junction is created, the cells can optimally gather photons and produce electricity. The essential characteristic of the solar cell is to convert sunlight into electricity, and it can do so when the P/N junction is put in place.").

*Determination* arbitrarily erased this longstanding rule in contravention of both the law and the record evidence demonstrating that the formation of the p/n junction is critical to the formation of a solar cell. This action was both unsupported by substantial evidence on the record and otherwise not in accordance with law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court:

(a) Hold that the *Final Determination* is unsupported by substantial evidence and otherwise not in accordance with law;

(b) Remand the *Final Determination* with instructions to issue a new determination that is consistent with the Court's decision; and

(c) Provide such other and further relief as this Court deems just and proper.

        Respectfully submitted,

        /s/ Craig A. Lewis
        Craig A. Lewis
        Nicholas W. Laneville
        Lindsay K. Brown
        Gregory M.A. Hawkins

        HOGAN LOVELLS US LLP
        Columbia Square
        555 Thirteenth Street, N.W.
        Washington, DC 20004-1109
        +1 (202) 637-8613
        craig.lewis@hoganlovells.com

        *Counsel to BYD (H.K.) Co., Ltd.*

Date: November 16, 2023