# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

BYD (H.K.) CO., LTD.,
        *Plaintiff*,

and

FLORIDA POWER & LIGHT
COMPANY,
        *Plaintiff-Intervenor*,

v.

UNITED STATES,
        *Defendant*,

and

AUXIN SOLAR INC.,
        *Defendant-Intervenor*.

Ct. No. 23-00221

**<u>Non-Confidential Version</u>**
Business Proprietary Information deleted from Pages 5, 18-19, and 25.

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Craig A. Lewis
Nicholas W. Laneville
Gregory M.A. Hawkins

HOGAN LOVELLS US LLP
Columbia Square Building 555
Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.5910

December 19, 2024

*Counsel to BYD (HK) Co., Ltd.*

TABLE OF CONTENTS

Page

I.    INTRODUCTION..........................................................................1

II.   ARGUMENT ..............................................................................6

      A.   The Government has Waived Any Argument Against
           Application of the *Loper Bright* Standard of Review to this
           Appeal...............................................................................7

      B.   Commerce's Refusal to Include the Cambodian Toll-
           Processors' Activities in the Analysis of Cambodian
           Processing Was Contrary to the Terms of the Statute ......9

      C.   Commerce Applied an Incorrect Interpretation of the
           "Minor or Insignificant" Standard ...................................16

      D.   Commerce's Placement of "Particular Emphasis"
           on R&D was Unlawful .......................................................20

      E.   The Value Added in Cambodia was Not "Small" and
           Commerce's Contrary Finding is Unsupported By
           Substantial Evidence .......................................................24

      F.   Commerce's Analysis of the Level of Investment in
           Cambodia was Unlawful...................................................29

      G.   Commerce's Use of Surrogate Values for Chinese
           Inputs was Unlawful.........................................................32

      H.   An Affirmative Circumvention Finding Was not
           Appropriate Under the Statute .......................................35

III.  CONCLUSION............................................................................38

# TABLE OF AUTHORITIES

<div align="right">Page(s)</div>

CASES:

*Abogados v. AT & T, Inc.*,
  223 F.3d 932 (9th Cir. 2000)..................................................................8

*Allied Tube and Conduit Corp. v. United States*,
  31 C.I.T. 1090 (Ct. Int'l Trade, 2007) .................................................31

*Calgon Carbon Corp. v. United States*,
  253 F. Supp. 3d 1312 (Ct. Int'l Trade 2017).......................................8

*Chevron, U.S.A., Inc. v. N.R.D.C., Inc.*,
  467 U.S. 837 (1984)................................................................................7

*Loper Bright Enterprises et al. v. Raimondo*,
  144 S.Ct. 2244 (2024).......................................................................7, 9

*Macao Com. & Indus. Spring Mattress Mfr. v. United States*,
  437 F. Supp. 3d 1324 (Ct. Int'l Trade 2020).....................................20

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013).............................................................................35

*Pesquera Mares Australes v. United States*,
  266 F.3d 1372 (Fed. Cir. 2001) ..........................................................17

*Timex V.I., Inc. v. United States*,
  157 F.3d 879 (Fed. Cir. 1998) ............................................................17

*United States v. Great Am. Ins. Co. of New York*,
  738 F.3d 1320 (Fed.Cir. 2013) .............................................................8

*Universal Camera Corp. v. N.L.R.B.*,
  340 U.S. 474 (1951).............................................................................20

STATUTES:

19 U.S.C. § 1671a ................................................................6

19 U.S.C. § 1671e ................................................................3

19 U.S.C. § 1673a ................................................................6

19 U.S.C. § 1673e ................................................................3

19 U.S.C. § 1677b(f)(1) ......................................................33

19 U.S.C. § 1677j
    (a)-(d) ..........................................................................4
    (b)(1)(C) ........................................................ 4, 14, 16
    (b)(1)(D) ....................................................................32
    (b)(1)(E) ....................................................................34
    (b)(2) ............................................................ 13, 15, 22
    (b)(2)(E) ............................................................ 24, 26
    (b)(3) ............................................................... 35. 36
    (b)(3)(B) ....................................................................13

REGULATIONS:

19 C.F.R. § 351.225 ............................................................3

19 C.F.R. § 351.226(h)-(l) ..................................................4

ADMINISTRATIVE DETERMINATIONS:

*Ferrovanadium from Russia*, 77 Fed. Reg. 6,537 (Dep't of
    Commerce Feb. 8, 2012) ................................................ 27

*Polyethylene Terephthalate Film, Sheet, and Strip from the
    United Arab Emirates,* 80 Fed. Reg. 26,229 (Dep't of
    Commerce May 7, 2015) ...............................................28

*See Stainless Steel Sheet and Strip from the People's
    Republic of China: Scope and Circumvention Inquiries
    Covering Exports from the Socialist Republic of Vietnam,*
    87 Fed. Reg. 56,626 (Dep't of Commerce Sept. 15, 2022) ..................15

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75,221 (Dep't of Commerce Dec. 8, 2022) ................................................................................ 1, 2

*Certain Aluminum Foil from the People's Republic of China*, 88 Fed. Reg. 17,177 (Dep't of Commerce Mar. 22, 2023) .................. 23

**OTHER AUTHORITIES**:

Proclamation No. 10414, 87 Fed. Reg. 35,067, (Exec. Office of the President June 9, 2022) ..................................... 38

MERRIAM-WEBSTER DICTIONARY, (last visited Dec. 19, 2024)................................................................ 25

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103-316 (1994) ................................................. 5, 19, 29

## GLOSSARY

| Abbreviations | Term |
|---|---|
| AD/CVD | Antidumping and Countervailing Duty |
| Auxin | Auxin Solar Inc. |
| *BYD HK Prelim. Analysis Mem.* | Memorandum from Jose Rivera to The File, *Crystalline Silicone Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China – Circumvention Inquiry with Respect to Cambodia: Preliminary Analysis Memorandum for BYD (H.K.) Co., Ltd.*, Case No. A-570-979 (Circumvention Inquiry–Cambodia 2022) (Dec. 1, 2022) |
| *BYD HK Final Analysis Mem.* | Memorandum from Commerce to the File, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, Final Analysis Memorandum for BYD (H.K.) Co., Ltd.*, Case Nos. A-570-979/C-570-980 (Circumvention Inquiry–Cambodia 2022) (Aug. 17, 2023) |
| CSPV | Crystalline Silicon Photovoltaic |
| *Final Determination* | *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Dep't of Commerce Aug. 23, 2023) |
| *Final IDM* | Memorandum from James Maeder to Lisa Wang, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, Issues and* |

| Abbreviations | Term |
|---|---|
| | *Decision Memorandum for the Circumvention Inquiry With Respect to Cambodia*, Case Nos. A-570-979/C-570-980 (Circumvention Inquiry–Cambodia 2022) (Aug. 17, 2023) |
| *Prelim. Determination* | *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Affirmative Determinations if Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75,221 (Dep't of Commerce Dec. 8, 2022) |
| *Prelim. IDM* | Memorandum from James Maeder to Lisa Wang, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, Preliminary Decision Memorandum for the Circumvention Inquiry With Respect to the Cambodia*, Case No. A-570-979 (Circumvention Inquiry Cambodia 2022) (Dec. 1, 2022) |
| R&D | Research and Development |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Plaintiff BYD (HK) Co., Ltd. ("BYD") submits this brief in reply to Defendant's Corrected Opposition to Plaintiff's and Plaintiff-Intervenor's Motions for Judgement Upon the Administrative Record, ECF No. 41, ("Def. Br."). For the reasons set forth below, BYD respectfully requests that the Court reverse the challenged determination of the U.S. Department of Commerce ("Commerce") and remand with instructions consistent with this Brief, Plaintiff's July 2, 2024, Memorandum, ECF No. 37 ("Pl. Br."), and the Court's findings.

## I.    INTRODUCTION

BYD challenges Commerce's affirmative circumvention finding with respect to BYD's Cambodian solar cell and module manufacturing operations and seeks reversal and remand of that determination by this Court. As a result of the challenged determination, imports of Cambodian origin solar cells and modules have been unlawfully subjected to antidumping duty ("AD") and countervailing duty ("CVD") measures since June 2024. *See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China:*

*Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75,221 (Dep't of Commerce Dec. 8, 2022).

The parties in this dispute continue to strongly disagree on several important technical aspects of Commerce's affirmative circumvention finding that are addressed below; but, the disagreement is even broader and more fundamental than this. At the heart of this dispute are differing conceptions of: (i) the type of commercial behavior Commerce is permitted to address under the statute; and (ii) the scope and permissible interpretation of the meaning of the statutory term "minor or insignificant."

The Government appears to believe that Congress has vested Commerce with limitless authority "to apply . . . orders in such a way as to prevent circumvention and diversion of U.S. law{,}" leaving it entirely to Petitioners and Commerce to shape the statute to whatever specific "scenarios" it may consider to constitute "circumvention." *See, e.g.*, Def. Br. at 19 ("Commerce's determination reflects the nature of the circumventing behavior alleged by Auxin and investigated by Commerce.").

Commerce's position, however, ignores the clearly delimited and exceptional nature of the circumvention statute. By way of context, AD and CVD duties may lawfully be imposed on imports only following a properly conducted investigation and on the basis of factually supported company-specific findings of dumping and subsidization that are accompanied by separate findings of material injury with respect to the imports at issue by the U.S. International Trade Commission ("ITC"). *See* 19 U.S.C. §§ 1671e, 1673e. Only then may AD/CVD measures be applied, and only to goods falling within the scope of the investigation and originating in the countries that were actually investigated. *See, e.g.*, 19 C.F.R. § 351.225 ("in considering whether a product is covered by the scope of the order at issue, the Secretary may need to determine the country of origin of the product.")

An affirmative circumvention finding is a narrowly-drawn exception to these rules. Based on an affirmative circumvention finding Commerce may: (1) expand the scope of AD/CVD orders beyond their original legal limits; (2) apply the measures to products originating in a third country, not the countries that were actually investigated; (3) apply these measures to exporters and producers for which there

have been no findings of dumping or subsidization; and (4) impose AD/CVD duties without any corresponding injury finding (or investigation of injury, for that matter) by the ITC with respect to the imports. *See, e.g.*, 19 C.F.R. § 351.226(h)-(l).

The Government seems to believe that Congress bestowed authority on Commerce to deviate from these principles whenever Commerce believes that the effectiveness of an AD/CVD measure has been threatened or impacted by changes in manufacturing methods or supply chains (what Commerce refers to as "circumvention scenarios"). But that is not what Congress did and that is not what the statute says. Instead, Congress identified a very limited number of specific manufacturing scenarios that may possibly be deemed "circumvention." 19 U.S.C. 1677j(a)-(d). Among those enumerated scenarios is where part of the production process has been shifted from the original subject country to a third country and "the process of assembly or completion in the foreign country . . . is minor or insignificant." 19 U.S.C. 1677j(b)(1)(C).

The legislative history clearly indicates that Congress intended that this scenario be limited to circumstances where the processing is

truly "minor or insignificant" – such as a simple "screw-driver" assembly operation. Uruguay Round Agreements Act, Statement of Admin. Action, H.R. Rep. No. 103-316 (1994) ("SAA") at 893–94. Consistent with that intention and the plain common sense meaning of the words used in the statute, this exception was never intended to cover situations such as here, where the agency concedes that the most significant and technologically complex part of the production process has been moved to the third country, where the value-added in the third country exceeds **[                                        ]**, and where it is conceded that the imported parts are "substantially transformed" in the third country into new and different articles with a different country of origin. Characterizing this situation as involving "minor or insignificant" processing is irrational and finds no support in the statute. Applying duties on the basis of that finding is unlawful.

Crucially, U.S. producers are not without a remedy where the manufacturing in the third country is, as in this case, more than "minor or insignificant." U.S. manufacturers who are concerned that such imports are dumped, subsidized, and causing injury have every right and opportunity to bring new AD/CVD petitions and prove their case.

*See* 19 U.S.C. §§ 1671a, 1673a. The perceived inconvenience or burden for U.S. competitors to prepare and prosecute such petitions does not bestow authority on Commerce to short-circuit the statutory scheme by stretching the circumvention authority beyond its bounds.

As discussed in BYD's Opening Brief and further discussed below in reply to the Government's response, Commerce has made its affirmative circumvention finding with respect to BYD through these misconstructions of the statute as well as factual findings that are not supported by substantial evidence. These errors demand reversal by this Court.

## II.    ARGUMENT

In addition to the above foundational errors, Commerce made several other important errors that rendered its decision unlawful and which the Government has failed to adequately support in its brief. Each of those additional errors is taken in turn in the sections that follow.

**A.    The Government has Waived Any Argument Against Application of the *Loper Bright* Standard of Review to this Appeal**

As a threshold matter, BYD addressed at some length in its opening brief the revised non-deferential standard of review that is applicable in this case under the U.S. Supreme Court's ruling in *Loper Bright Enterprises, et al. v. Raimondo*, 144 S.Ct. 2244 (2024). *Loper Bright* overturned the previous deferential standard of review established in *Chevron, U.S.A., Inc. v. N.R.D.C, Inc*, 467 U.S. 837 (1984), and Commerce's interpretations of statutory provisions are no longer entitled to deference from this Court. Instead, this "Court{} must exercise {its} independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 144 S.Ct. 2244, 2273. This Court must determine not whether an agency's "reading {is} 'permissible' in such a case," *id.* at 2251, as *Chevron* directed, *Chevron*, 467 U.S. at 843, but rather whether the agency's interpretation reflects "the best reading of the statute. . . ." *Loper Bright*, 144 S.Ct. 2244, 2266.

The Government chose not to respond to BYD's arguments under this new standard—indeed, the Government did not contend with *Loper*

*Bright* at all. The Government instead focused solely on the standard of review applicable to agency findings of fact. *See* Def. Br. at 13-14.

This Court has held that the failure to submit a substantive response to arguments raised by plaintiffs constitutes waiver of any argument in defense. For example, in *Calgon Carbon Corp. v. United States,* 253 F. Supp. 3d 1312 (Ct. Int'l Trade 2017), both the government and petitioners chose not to address certain arguments raised by the plaintiffs in their CIT Rule 56.2 motion and brief. The Court found that "{a}ny argument, therefore, defending Commerce's {determination}, is waived, as {petitioner} claimed in its reply brief. *Id.*, at 1321 (*citing United States v. Great Am. Ins. Co. of New York,* 738 F.3d 1320, 1328 (Fed.Cir.2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."); *cf. Abogados v. AT & T, Inc.,* 223 F.3d 932, 937 (9th Cir. 2000) (affirming a grant of summary judgment based on waiver and recognizing that the non-moving party failed to make certain arguments in its opposition brief).

The government had ample opportunity to address BYD's assertion that *Loper Bright* applies in this case, but they made a

decision not to do so. Any argument against BYD's allegations concerning the applicability of *Loper Bright* is thus waived. This Court should therefore apply the *Loper Bright* standard and "exercise {its} independent judgment in deciding whether {Commerce} has acted within its statutory authority" and may not defer to agency interpretations of ambiguous statutes. *Loper Bright*, 144 S.Ct. 2244, 2273. This is particularly apt in this case as Commerce relied on interpretations of the statute that are not only not the "best", but are plain wrong.

### B. Commerce's Refusal to Include the Cambodian Toll-Processors' Activities in the Analysis of Cambodian Processing Was Contrary to the Terms of the Statute

The first expansive error in Commerce's determination was the agency's refusal to include the Cambodian toll-processors' activities in its "minor or insignificant" analysis—despite the fact that all of the processing in Cambodia took place at the Cambodian processors' facilities. As Commerce put it, the agency only "considered the level of investment, R&D{,} and production facilities *by BYD* and did not consider the activities of BYD's unaffiliated tollers." Def. Br. at 18-19 (citing IDM at 50-52 (Appx1245–47)) (emphasis added).

BYD, however, did not have its own facilities in Cambodia, but instead manufactured its solar cells and modules by contracting for that processing to be performed on its behalf by the Cambodian toll-processers. *See, e.g.*, C.R. 31, Appx3710–3723. This meant that Commerce effectively found that there was little to no processing being performed in Cambodia when, in fact, the opposite was the case – the manufacturing process in Cambodia involved very significant manufacturing facilities and equipment, the processing involved complex technologically sophisticated steps that Customs acknowledged were the most significant in the entire supply chain, large amounts of value-added were created, and the processing resulted in substantial transformation of locally sourced and imported materials into new and different articles of Commerce. Memorandum from Commerce to the File, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic from China – Circumvention Inquiry with Respect to Cambodia: Preliminary Analysis Memorandum for BYD (H.K.) Co., Ltd.*, Case No. A-570-979 (Circumvention Inquiry Cambodia 2022) (Dec. 1, 2022)("BYD HK Prelim. Analysis Mem.") at 3-

4, Appx1002–1003; Prelim. IDM, Appx1028; Final IDM at 34, Appx1229.

Commerce disregarded these Cambodian operations solely because BYD hired contractors to carry out those activities rather than doing the processing itself. As BYD has argued, however, the statute does not permit Commerce to ignore processing actually performed in the country in question simply because it is conducted on a contract basis. The statute plainly directs Commerce, without qualification, to consider whether "the process of assembly or completion in the third country" is "minor or insignificant." Nowhere in the statute, or in its legislative history, is it stated or implied that Commerce may choose to disregard processing activities performed in the third country because they are not carried out by the respondent itself. To the extent Commerce believes otherwise, Commerce has fundamentally misinterpreted the statute and this Court should not defer to that misconstruction.

The Government has belatedly offered a series of justifications for this erroneous misinterpretation of the law, none of which have merit. First, the Government claims that Commerce's decision to ignore the

processing actually conducted in Cambodia is lawful because Commerce was trying to address a "particular circumvention scenario", namely where a company (BYD) chooses to "circumvent" the AD/CVD orders by moving production out of the country under order (China) and utilizing toll processors in a third country (Cambodia) rather than manufacturing itself. More importantly, that is not how the statute is written. As noted above, the statute is not concerned with who is conducting the processing in the third country, the statute is concerned only with whether the processing activities that are performed in the third country are "minor or insignificant."

Certainly, Commerce may conduct a comparative analysis to determine whether the processing performed in the third country is minor or insignificant in comparison to the activities performed in the country under order. BYD does not dispute that such a comparison is relevant and consistent with the statute. But that is a different question from whether it is permissible to exclude consideration of the activities actually performed in the third country from this analysis – to effectively pretend that the processing activities in Cambodia do not exist. The statute permits the former. It does not permit the latter.

In fact, under a separate subsection, the statute *does* permit Commerce to consider affiliation in ultimately evaluating "whether to include merchandise assembled or completed in a foreign country in an {AD/CVD} order." 19 U.S.C. § 1677j(b)(3)(B). But this is under a distinct statutory prong that follows, and therefore is not a part of, the "minor or insignificant" determination under 19 U.S.C. § 1677j(b)(2). Indeed, the existence of this separate prong enabling Commerce to consider affiliation in that context only confirms that affiliation plays no role in cabining the minor or insignificant analysis.

Commerce's view that it may exclude consideration of processing performed in Cambodia because it is conducted on a toll-processing basis is also not the "best" interpretation of the statute because it leads to absurd results. For example, assume that 90% of the processing steps and value are transferred from China to Cambodia where toll-processors perform the processing. Under Commerce's interpretation, the agency could disregard the 90% of processing performed in Cambodia and conclude that the processing in Cambodia that Commerce is willing to recognize (0%) is minor or insignificant compared to the 10% that is conducted in China. This cannot be.

Similarly, assume that the same division of activities described above are conducted in China and Cambodia, but the Chinese producer owns the facilities in Cambodia. In this case, as if by magic, the Cambodian processing is considered and the comparative analysis (90% in Cambodia and 10% in China) leads to a negative circumvention finding. Again, this cannot be how the statute was intended to operate.

The Government suggests further that BYD's understanding of the statute must be wrong because "Commerce would be required to assess the level of investment, the level of R&D, and production facilities underpinning all goods and services acquired from unaffiliated sellers in the third country." Def. Br. at 18. But, that is precisely what the statute requires – an assessment of the "the process of assembly or completion in the foreign country." 19 U.S.C. § 1677j(b)(1)(C). Moreover, each and every statutory factor relating to the "minor or insignificant" determination (whether it is the level of investment, research and development, the nature of the production process, the extent of processing facilities, and whether the value of the processing performed is a small proportion of the value of the merchandise imported into the United State) is expressly tied by the statutory text to the "foreign

country" at issue. 19 U.S.C. § 1677j(b)(2). None of these factors invites consideration of who does the this processing. The only question is whether what is being done in the country is "minor or insignificant."

Next, the Government attempts, to no avail, to distinguish its treatment of the tollers in this case from Commerce's treatment of tollers in *Stainless Steel Sheet and Strip from the People's Republic of China. See Stainless Steel Sheet and Strip from the People's Republic of China: Scope and Circumvention Inquiries Covering Exports from the Socialist Republic of Vietnam,* 87 Fed. Reg. 56,626 (Dep't of Commerce Sept. 15, 2022) (preliminary scope and circumvention determinations). In that case, one respondent, operated as a trading company selling stainless steel sheet and strip ("SSSS") to the United States that was produced by another respondent in the proceeding. Yet Commerce (correctly) analyzed the SSSS products produced and sold by the other respondent in conducting its circumvention analysis. *Id.* The Government attempts to distinguish that case on the sole basis that "Unlike the SSSS case, BYD's tollers were not selected as respondents to Commerce's inquiry{.}" But, as BYD noted in its brief, whether or not the tollers were treated as mandatory respondents cannot change the

statutory focus of the circumvention inquiry which is whether "the process of assembly or completion in the foreign country . . . is minor or insignificant." 19 U.S.C. § 1677j(b)(1)(C). Again, that analysis is focused on the significance of the processing that is performed in the inquiry country, not who performs it.

Any way you cut it, Commerce's exclusion of the activities of tollers from its analysis was flatly inconsistent with the statute. Commerce should be directed to reconsider its determination taking the tollers' activities into account as the statute requires.

## C.    Commerce Applied an Incorrect Interpretation of the "Minor or Insignificant" Standard

The essential focus of the circumvention inquiry is to determine whether the processing performed in the third country was more than "minor or insignificant." As BYD argued, Commerce's finding that the processing in Cambodia is minor or insignificant on the record of this case cannot be squared with the plain and common sense meaning of the statute or the record facts.

As BYD argued in its Rule 56.2 Brief, the term "minor or insignificant" should be interpreted by this Court using the traditional tools of statutory interpretation including dictionary definitions. *See*,

*e.g.*, *Pesquera Mares Australes v. United States*, 266 F.3d 1372, 1382–83 (Fed. Cir. 2001) (relying on the dictionary definition of a key phrase in a statute); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998) ("Beyond the statute's text, those 'tools' include the statute's structure, canons of statutory construction, and legislative history."). All of these tools confirm that the term "minor or insignificant," in the context of the circumvention statute, means processing that is "inconsequential," or of "little importance."

Here, Commerce asks this Court to uphold its interpretation of the term "minor or insignificant" as reasonably embracing circumstances where, by Commerce's own findings:

- the weighted average of the value added in Cambodia was [                               ] of the total value of that finished module. *BYD HK Final Analysis Mem.* at 2, Appx1193.

- "producing solar cells and modules in {Cambodia} involves a multi-step production process that requires more precise and sophisticated equipment at multiple stages compared to

producing ingots and wafers in China." *Id.* (internal quotations omitted).

- cell manufacturing is a high-tech manufacturing process that involves "significant technical requirements. . . and changing technologies." *Final IDM* at 34, Appx1229.

- because of technological improvements to solar cells, module makers must regularly upgrade their production lines to avoid becoming obsolete. Hence, there are also meaningful technological requirements that must be met before producing solar cells. *Id.* (internal quotations omitted).

- Solar cell and module production require significantly more direct manufacturing workers as well as a skilled labor force as compared to upstream manufacturing processes such as ingot and wafer production. *Id.* at 35, Appx1230.

No reasonable person could characterize this level and type of processing as "minor or insignificant" (i.e., "inconsequential," or of "little importance"). The value-added of over **[           ]** of the finished product is enough by itself to invalidate any such conclusion. Nor is such conclusion consistent with the very low standard that is contemplated

in the legislative history of the circumvention law where the illustrative example of a minor or insignificant process is a simple "screwdriver assembly operation" with presumably minimal complexity, local investment, or value-added. SAA at 893–94. The processing in Cambodia is so far beyond that standard that no reasonable or unbiased person could possibly conclude otherwise. Commerce's position to the contrary is therefore both arbitrary and capricious.

Not surprisingly, the Government has little to say in response. The Government's principal argument is that "Commerce found that three of the statutory factors (the level of investment, the level of R&D, and the extent of the production facilities) supported a finding that BYD's production in Cambodia was minor{}." Def. Br. at 17. As noted above, however, Commerce's evaluation of those factors is invalidated by the fact that Commerce unlawfully refused to include the investment and production facilities of the Cambodian processors in the analysis. In other words, Commerce never properly considered any of those factors.

Also, while, this Court may afford some deference to the agency's weighing of the facts, that deference is not limitless. The weighing of those facts must be supported by substantial record evidence, which it

was not. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951). "Substantial evidence" generally connotes a reasonableness review. As such, when addressing whether the agency supported its decision with substantial evidence, the CIT analyzes whether the challenged action "was reasonable given the circumstances presented by the whole record." *Macao Com. & Indus. Spring Mattress Mfr. v. United States*, 437 F. Supp. 3d 1324, 1328 (Ct. Int'l Trade 2020).

Commerce clearly exceeded those limits in this case. Its determination that the Cambodian processing at issue here was "minor or insignificant" is not supported by substantial evidence and is both arbitrary and capricious.

### D. Commerce's Placement of "Particular Emphasis" on R&D was Unlawful

As BYD noted, Commerce's "minor or insignificant" finding was driven principally by one factor – the relatively low level of research and development ("R&D") conducted in Cambodia. Commerce concedes that it placed "particular emphasis" on this factor, although it is more accurate to say that this factor played a decisive role in its

determination. *See* Brief from Hogan Lovells US LLP to the U.S.
Department of Commerce, *2022 Circumvention Inquiry of Antidumping
Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not
Assembled into Modules, from the People's Republic of China: Second
Tranche Case Brief*, Case No. A-570-979 (Mar. 24, 2023), C.R. 265,
Appx11969–99, at 19-20, Appx11995–96.

In defending its decision to "place particular emphasis on the R&D
factor, the Government first raises a strawman argument, asserting
"BYD contends that Commerce lacks authority to give one factor more
weight than any other." Def. Br. at 15. BYD, however, explicitly
recognized in its brief that the statute instructs Commerce to consider
and weigh all five statutory factors under 19 U.S.C. 1677j(b)(2) in
determining whether processing is minor or insignificant. *See, e.g.*, Pl.
Br. at 57-58. BYD does, however, disagree with the extraordinary and
preclusive weight that Commerce assigned to the single R&D factor in
this case. As BYD explained at in its Rule 56.2 brief, Pl. Br. 56-59, the
record evidence does not support that decision and doing so is
inconsistent with both the statute and Commerce's precedent. The
government's brief fails to address those arguments.

Commerce's analysis of the R&D factor was also substantively flawed. This level of R&D is to be "taken into account" in assessing "whether the *process of assembly or completion* is minor or insignificant under paragraph (1)(C)." Commerce instead simply considered whether BYD spent dollars in Cambodia on R&D. After finding that BYD had no such expenditure in Cambodia, it determined that this factor weighed in favor of finding circumvention.

The correct reading of the statute is that Commerce is directed to evaluate the extent to which R&D expenditures (regardless of where they are spent) *support the manufacturing processes that took place in Cambodia. Loper Bright* at 2266 ("In the business of statutory interpretation, if it is not the best, it is not permissible."). Significantly, the Government neglected entirely to address *Certain Aluminum Foil from the People's Republic of China*, where Commerce made essentially the same point, explaining the underlying logic:

> The factors involving the level of investment, *the level of R&D*, and the extent of the production facilities in {the third country} weigh less heavily in our determination than the factors involving the nature of the production process and the value added in {the third country} because the former relate more broadly to the companies and

> their facilities, whereas *the latter relate more to the production of the inquiry merchandise itself.*

88 Fed. Reg. 17,177 (Dep't of Commerce Mar. 22, 2023) (preliminary affirmative determinations of circumvention with respect to the Republic of Korea and the Kingdom of Thailand) and accompanying Issues and Decision Memorandum (Korea) at 15 (emphasis added). In other words, the relevant issue under the statute is how much of the R&D expenditure relates to the manufacturing processes conducted in the third country.

Here, Commerce's own findings that "R&D has been key for technological breakthroughs in the solar cell and module industry"—the very processes that are *taking place in Cambodia*—should have indicated to Commerce that the R&D statutory factor *supports* that these processes preformed in Cambodia are not minor or insignificant, rather than the opposite. *See* Final IDM at 62, Appx1257.

In summary, Commerce's treatment of the R&D factor in this case is deeply flawed and should be reversed by this Court. Commerce's bestowal of decisive negative weight to the R&D factor is not supported by the evidence. If anything, the R&D factor supported a negative

determination because the most important R&D relates to the operations performed in Cambodia, not China.

### E. The Value Added in Cambodia was Not "Small" and Commerce's Contrary Finding is Unsupported By Substantial Evidence

In determining whether the processing at issue in a third country was "minor or insignificant" the statute instructs Commerce to consider "whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States." 19 U.S.C. 1677j(b)(2)(E). Here, Commerce found that the value added from processing performed in Cambodia represented **[      ]** percent of the value of the finished solar modules imported into the United States. *BYD HK Final Analysis Mem.* at 2, Appx1193. Based on that figure, Commerce drew the extraordinary conclusion that the value-added in this case was "small." Final IDM at 64, Appx1259.

Once again, Commerce's interpretation of the facts cannot be squared with the text of the statute. The word "small" means "little or close to zero in an objectively measurable aspect (such as quantity);" "of little consequence, trivial." *Small*, MERRIAM-WEBSTER DICTIONARY,

https://www.merriam-webster.com/dictionary/small (last visited Dec. 14, 2024). Finding that [                    ] of something is a "small proportion" or "close to zero," or "trivial" can only be fairly characterized as arbitrary and capricious.

As BYD pointed out, Commerce's extraordinary value-added finding is also inconsistent with other cases in which even smaller amounts of value-added were found not to be a small proportion. Pl. Br. at 49-51. Rather than explain these contrary precedents, however, the Government seeks to avoid the issue entirely by asserting that it "is not bound by these determinations because they do not involve the solar industry." Def. Br. at 29. But the Government fails to explain what specific characteristics of the solar industry are capable of turning a large number into a small one.

The Government also dismisses Commerce's contrary decisions in *Tissue Paper from China* and *Hot-Rolled Lead from Germany* as "unclear" or because the value-added factor was allegedly not decisive in the overall negative circumvention determination. Def. Br. at 28-29. But, the issue is not whether that factor had decisive weight in the overall circumvention determination, but whether Commerce treated

these value-added figures as "small" within the meaning of 19 U.S.C. § 1677j(b)(2)(E) and therefore supportive of a determination that the processing was minor or insignificant.

The Government also concedes that in *Ferrovanadium from Russia* Commerce indeed found that a value added lower than that which Commerce calculated for BYD was not small. The Government attempts to deflect from this finding, however, by asserting that "Commerce recognized that its finding differed from other cases and was based on the high volatility of the price of ferrovanadium during the inquiry period." Def. Br. at 29. But, the Government does not explain how the "volatility" of ferrovanadium prices factored into or explained the determination that a value-added lower than that for BYD was nevertheless "small." In fact, we have closely reviewed that determination again and cannot see what the Government is referring to.

The reality is the comparative analysis that was conducted in *Ferrovanadium from Russia* only further supports BYD's position because Commerce in that case took into account the nature and

complexity of the processing in evaluating whether the value-added was

small:

> In the above-cited cases, while the value-added
> percentage may have been as high as 20 percent,
> the production processes were relatively minor,
> involving finishing operations that did not alter
> the chemical structure or basic physical nature of
> the imported material. In contrast, the processing
> of vanadium pentoxide into ferrovanadium
> requires the complete transformation of the
> chemical and physical properties of the imported
> material. Therefore, the valued-added ranges we
> calculated, as discussed above, when viewed in
> combination with this fundamental alteration of
> the imported material, are not small.

77 Fed. Reg. 6,537, 6,542 (Dep't of Commerce Feb. 8, 2012). As noted

above, Commerce in this case expressly found that the processing

preformed in Cambodia was significant and complex (not to mention

that it also "altered the chemical structure and basic physical nature of

the imported material" by rendering it capable of generating electricity).

Under Commerce's reasoning, this fact *enhances*, not diminishes, the

significance of the value-added found in this case.

In fact, BYD explained that "Congress has directed {the

Department} to focus more on the nature of the production process and

less on the difference in value between the subject merchandise and the

parts and components imported into the processing country." *See, e.g.*, *Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates*, 80 Fed. Reg. 26,229 (Dep't of Commerce May 7, 2015) (preliminary negative determination of circumvention of the antidumping order), and accompanying Issues and Decision Memorandum at 7; *see also* Pl. Br. at 51-52 (referencing a series of Commerce preference where it appropriately followed the approach that Congress instructed). The SAA further instructs Commerce to undertake "a more qualitative focus on the nature of the production process," rather than "a rigid numerical calculation of value-added." SAA at 893.

## F.   Commerce's Analysis of the Level of Investment in Cambodia was Unlawful

BYD also takes issue with Commerce's analysis of the level of investment in Cambodia. As BYD pointed out, Commerce's determination was flawed first because Commerce improperly refused to consider the investments by the Cambodian tollers – the entities that actually engaged in the Cambodian processing. For the reasons stated above Commerce's refusal to consider the Cambodian toll-processors' investments constitutes reversible error.

The second error in Commerce's investment analysis was Commerce's decision to compare the level of investment in Cambodia and the level of investment of BYD's Chinese affiliates on an absolute basis (*i.e.*, total value of investments made) rather than on a per-megawatt basis (*i.e.*, value of the investments relative to production). As BYD has argued, this approach was highly distortive in that it failed to take into account the vastly smaller market served by the Cambodian operations as compared to BYD's Chinese affiliates, who serve the very large Chinese and global markets.

The Government responds that "a per-unit basis does not account for the threshold investments necessary to achieve production" and "fails to account for the economies of scale realized in the Chinese market." Def. Br. at 32. But calculating on a per-unit basis (*i.e.*, total investments divided by total production) does not in any way "ignore" investment amounts—it fully and reasonably accounts for these amounts and spreads them proportionally over economic output (*i.e.*, production) in order to obtain a reasonable point of comparison. The difference is that comparing investment levels at an absolute level, as the Government has insisted on doing, ignores the very different scales

of production in the two countries. The Chinese industry has invested in a large upstream industry that supplies virtually all of the world's demand for polysilicon wafers, whereas the Cambodian industry manufactures for a much smaller subset of markets. *Final IDM* at 18, Appx1213. The circumvention inquiry was focused on the relative contributions of investments made to the manufacture of *the products* in the two countries. By ignoring the size of the markets served and crudely comparing investment levels on an absolute basis, Commerce created a severely distorted comparison at the relevant product level.

The Government attempts to defend Commerce's approach by arguing that "the statute does not speak to how Commerce should compare levels of investment," and that "because Commerce's determination to compare investment on an absolute basis is well-explained and supported by the record" it is lawful. But, that is not sufficient. Commerce's obligation in carrying out the statute's mandate does not end with Commerce explaining its methodology. That methodology must also be sound and consistent with the objective of the statute. Here, Commerce's methodology significantly understates the relative amount of investment in Cambodia. As such, Commerce's

methodology does not faithfully carry out the intent of the statute and is
unlawful. *See, e.g.*, *Allied Tube and Conduit Corp. v. United States*, 31
C.I.T. 1090, 1097 (Ct. Int'l Trade, 2007) (remanding a decision to
Commerce as being unsupported by substantial evidence because
Commerce used a distortive methodology).

### G.    Commerce's Use of Surrogate Values for Chinese Inputs was Unlawful

BYD also challenges Commerce's use of "surrogate values" to
value Chinese inputs used in the production process in Cambodia.

As BYD set out in its brief, the statute directs Commerce to take
into account "the value of the merchandise produced in the foreign
country to which the antidumping duty order applies is a significant
portion of the value of the merchandise that was exported to the United
States." *See* 19 U.S.C. § 1677j(b)(1)(D). In analyzing this statutory
factor, Commerce used surrogate values rather than the respondent's
actual purchase prices to value Chinese-produced inputs that were used
to produce solar cells and modules in the inquiry country. *Final IDM* at
45, Appx1240.

The Government contends that Commerce's reliance on surrogate
values is justified because the statute refers to the value of merchandise

produced "in the foreign country to which the antidumping duty order applies." Def. Br. at 33 (citing 19 U.S.C. § 1677j(b)(1)(D). The Government interprets that language as a directive to use surrogate values because the "foreign country" at issue is China and China is a non-market economy in which prices are unreliable and surrogate values must be used. But, the reference to production in "the foreign country to which the antidumping duty order applies" simply identifies the inputs that are to be valued and compared (for example, polysilicon wafers) – it does not speak to *how* to reasonably value the input.

Here the Chinese inputs at issue (such as polysilicon wafers) were being imported into and used in manufacture in Cambodia and it is the use of these inputs *in Cambodia* that is under evaluation. Cambodia is a market economy. In market economy cases, Commerce is instructed to "normally" use the costs recorded in the books and records of the respondent if such costs are kept in accordance with generally accepted accounting principles of the exporting country and "reasonably reflect costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1). Commerce found BYD's books to be kept in

accordance with this provision. Commerce also made no finding that BYD's books did not reasonably reflect the required costs.

BYD accepts that Commerce could permissibly decline to rely on actual costs if substantial evidence showed that those market based prices do not "reasonably reflect the costs associated with the production and sale of the merchandise." Final I&D Mem. at 44, Appx1239. However, no such evidence exists in this case. In the place of substantial evidence to support this distortion theory, Commerce offered only conjecture that the prices for Chinese inputs as sold into the Cambodian market economy must be distorted by "state control" and "the absence of market directed decisions on price and cost." *Id.* at 44-45, Appx1239–1240. But there is no actual evidence in the record that the Chinese Government controlled Cambodia's market economy or prices in that economy and Commerce has not identified none. Absent such evidence, Commerce had no basis to disregard prices in the Cambodian market in favor of "surrogate values."

## H.    An Affirmative Circumvention Finding Was not Appropriate Under the Statute

Finally, BYD takes issue with Commerce's consideration of the appropriateness factor in the statute.

The governing statute requires Commerce to take action on an affirmative circumvention determination only if Commerce makes a separate finding that such action is "appropriate" to avoid evasion of the order. 19 U.S.C. § 1677j(b)(1)(E). Making this finding is not optional. It is a mandatory element of the statute. As BYD pointed out in its Rule 56.2 brief, Commerce failed to make this finding. Pl. Br. at 69-74.

The Government argues in response that this finding was unnecessary because "Commerce need not consider any factors beyond those contained in 19 U.S.C. § 1677j(b)(3) before determining that the inclusion of circumventing merchandise in the scope of an order is appropriate." Government Response at 35. But, this reading of the statute fails to recognize that the statute lists "appropriateness" as a *separate* statutory factor from the "minor or insignificant" prong addressed above. Subsuming "appropriateness" within the "minor or insignificant" factor is contrary to the statutory scheme – which lists the "appropriateness" analysis separately from and on par with the "minor or insignificant analysis" within Section 1677j(b)(1) – and would impermissibly render the "appropriateness" provision surplusage. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (explaining that

the canon against surplusage suggests that the court will reject interpretation of a statute where that interpretation would "render superfluous another part of the same statutory scheme")

The Government also wrongly claims that "BYD does {} not dispute Commerce's {circumvention} finding, nor does it identify any deficiency in Commerce's analysis of the record evidence under paragraph 1677j(b)(3)." Def. Br. at 36. That is obviously incorrect. BYD devoted many pages of its opening brief, and again here, explaining how Commerce's "affirmative finding of circumvention with respect to BYD HK is neither supported by substantial evidence nor in accordance with law." *See* Pl. Br. at 1-2, 27-75.

The Government also attempts to dismiss BYD's arguments that Commerce's affirmative determination was inappropriate without ever addressing the substance of those arguments. BYD argued that Commerce's decision was inappropriate because it upended a decade of harmonious federal agency precedent (Commerce, U.S. Customs and Border Protection, and ITC), finding that the cell manufacturing was a substantial and meaningful process. BYD Br. at 72-74. The solar industry had grown around this precedent, investing in supply chains

based on these consistent decisions. *Id.* BYD argued that throwing all of that precedent out and disturbing these supply chains was not appropriate. The Government responded – without contending with the substance of BYD's argument – that the circumvention statute can "capture merchandise that is substantially transformed in third countries." Government Response at 36. Simply because the statute *can* capture material substantially transformed in third countries does not mean that it is *appropriate* in all instances for it to do so. BYD explained why, in this case, that would not be appropriate, and the Government has failed to meaningfully rebut BYD's arguments.

BYD also pointed to Proclamation 10414 as further evidence that an affirmative finding was inappropriate, but the Government likewise declined to meaningfully engage with that argument. BYD explained that the President's unprecedented intervention in Commerce's proceeding to prevent application of any duties arising therefrom for a two-year period was evidence of the inappropriateness of an affirmative finding. *See* Pl. Br. at 72 (referencing *Declaration of Emergency and Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules From Southeast Asia,*

Proclamation No. 10414, 87 Fed. Reg. 35,067 (Exec. Office of the President June 9, 2022)). The Government made no effort to contend with this fact, simply dismissing it as irrelevant. Def. Br. at 37. BYD reiterates the extraordinary intervention of the executive branch to countermand the effects of an affirmative determination is strong evidence that Commerce's determination was not "appropriate."

## III.    CONCLUSION

For the foregoing reasons, and those set forth in BYD's Opening Brief, BYD respectfully requests that the Court grant BYD's Motion for Judgment on the Agency Record. BYD respectfully requests that this Court reverse and remand the determination to Commerce with instructions to revise its *Final Determination* with respect to BYD consistent with the arguments set forth above.

Respectfully submitted,

/s/ Craig A. Lewis
Craig A. Lewis
Nicholas W. Laneville
Gregory M.A. Hawkins

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.5600

Fax: +1.202.637.5910
E-mail: craig.lewis@hoganlovells.com

*Counsel to BYD (HK) Co., Ltd.*

Dated: December 19, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Standard Chambers Procedure section 2(B)(1), the undersigned counsel at Hogan Lovells US LLP hereby certifies that this Reply in Support of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record complies with the word-count limitation requirement. The memorandum of law contains 6,887 words according to the word-count function of the word-processing software used to prepare the Memorandum.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Craig A. Lewis
Craig A. Lewis

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: craig.lewis@hoganlovells.com

*Counsel to BYD (HK) Co., Ltd.*

</div>

Dated: December 19, 2024

## CERTIFICATE OF SERVICE

I, Craig A. Lewis, hereby certify that copies of the attached public version submission have been served by the Court's CM/ECF system, on December 19, 2024, addressed to the following parties:

Stephen C. Tosini

U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Phone: +1.202.616.5196
Email: stephen.tosini@usdoj.gov

*Counsel to Defendant the United States*

Matthew R. Nicely

Akin, Gump, Strauss, Hauer & Feld, LLP
2001 K Street, NW.
Washington, DC 20006-1037
Phone: +1.202.887.4046
Email: mnicely@akingump.com
*Counsel to Plaintiff–Intervenor Florida Power & Light Company*

Thomas M. Beline

Cassidy Levy Kent (USA) LLP
2112 Pennsylvania Avenue, NW.
Suite 300
Washington, DC 20037
Phone: +1.202.567.2316
Email: tbeline@cassidylevy.com

*Counsel to Defendant–Intervenor Auxin Solar Inc.*