IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| BYD (H.K.) CO., LTD., | ) | |
| Plaintiff, | ) | |
| and | ) | |
| FLORIDA POWER & LIGHT COMPANY, | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | Court No. 23-00221 |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| AUXIN SOLAR INC., | ) | |
| Defendant-Intervenor. | ) | |

<u>PLAINTIFF-INTERVENOR FLORIDA POWER & LIGHT COMPANY'S
REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
JUDGMENT ON THE AGENCY RECORD</u>

Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street N.W.
Washington, DC 20006
Phone: (202) 887-4046
E-mail: mnicely@akingump.com
*Counsel for Florida Power & Light
Company*

Dated: January 9, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

GLOSSARY ................................................................................................................ iii

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.  DEFENDANT MISINTERPRETS THE STATUTE ............................................. 2

II. DEFENDANT FAILS TO SHOW THAT COMMERCE REASONABLY FOUND
THAT THE PROCESS OF ASSEMBLING OR COMPLETING CSPV CELLS
AND MODULES IN THAILAND WAS MINOR ................................................. 3

   A.  Defendant Fails to Show How Commerce's Findings Supported Its Ultimate
Conclusion .......................................................................................................... 3

   B.  Defendant Fails to Show that Commerce Permissibly Ignored the
Investments and Production Facilities of BYD's Tollers ..................................... 5

   C.  Defendant Fails to Show that Commerce's Elevation of the R&D Factor Was
Reasonable .......................................................................................................... 8

   D.  Defendant Fails to Show that the Value Added in Cambodia Was Small ........11

CONCLUSION ......................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

Cases

*HLDS (B) Steel SDN BHD v. United States*, No. 21-00638,
2024 WL 244937 (Ct. Int'l Trade Jan. 23, 2024)............................5, 10

Statutes

19 U.S.C. § 1677j(b)............................................................................2

19 U.S.C. § 1677j(b)(1).......................................................................5

19 U.S.C. § 1677j(b)(1)(B).............................................................2, 7

19 U.S.C. § 1677j(b)(1)(C).............................................................2, 7

19 U.S.C. § 1677j(b)(2)...................................................................4, 10

Administrative Determinations

*Antidumping and Countervailing Duty Orders on Certain
Aluminum Foil From the People's Republic of China:
Final Affirmative Determinations of Circumvention With
Respect to the Republic of Korea and the Kingdom of
Thailand*, 88 Fed. Reg. 82,824 (Nov. 27, 2023) .............................9, 10

Other Authorities

Merriam-Webster Dictionary ..................................................................11

GLOSSARY

| Abbreviation | Term |
|---|---|
| BYD | BYD (H.K.) Co., Ltd. |
| BYD Reply | BYD's Reply Brief in Support of Plaintiff's Rule 56.2 Motin for Judgment on the Agency Record |
| CSPV | crystalline silicon photovoltaic |
| Decision Memo | Issues and Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Cambodia accompanying *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023) |
| Def. Br. | Defendant's Opposition to Plaintiff's and Plaintiff-Intervenor's Motions for Judgment on the Administrative Record |
| *Final Determination* | *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023) |
| FPL | Florida Power & Light Company |
| FPL Br. | Plaintiff-Intervenor Florida Power & Light Company's Rule 56.2 Motion for Judgment on the Agency Record |
| SAA | Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103-316, Vol. I (1994) |

INTRODUCTION

Plaintiff-Intervenor Florida Power & Light Company ("FPL")[1] hereby submits this reply brief in support of the Rule 56.2 motions for judgment upon the agency record filed by FPL and Plaintiff BYD (H.K.) Co., Ltd. ("BYD" or "Plaintiff"). For the reasons explained by BYD in its reply brief and the additional reasons provided in this brief, the arguments in Defendant's Opposition to Plaintiff's and Plaintiff-Intervenor's Motions for Judgment on the Administrative Record, ECF No. 39 ("Def. Br."), in defense of Commerce's *Final Determination* are without merit and should be rejected. FPL supports the arguments made in BYD's Reply Brief in Support of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 42 ("BYD Reply"), and adopts them by reference. In this brief, FPL further addresses several issues regarding Commerce's conclusion that the process of assembly or completion in Cambodia for the CSPV cells and modules exported by BYD was minor or insignificant.

---

[1] FPL is a subsidiary of NextEra Energy, Inc.

<u>ARGUMENT</u>

## I.   DEFENDANT MISINTERPRETS THE STATUTE

As BYD explained in detail in its reply brief, Defendant's arguments in support of Commerce's *Final Determination* rest on a fundamental misinterpretation of the statute. To expand the scope of an antidumping or countervailing duty order under 19 U.S.C. § 1677j(b), Commerce must find that "the process of assembly or completion in the foreign country" of the "imported merchandise" is "minor or insignificant." 19 U.S.C. § 1677j(b)(1)(B)-(C). The particular "circumvention scenario" alleged (Def. Br. 13-15, 17, 20, 22) cannot change that fundamental inquiry under the statute or the plain meaning of the statutory terms.

Defendant repeatedly characterizes the relevant inquiry as whether "BYD circumvented" the orders. Def. Br. 11, 21-22. That is not the proper question under the statute. As FPL explained in its opening brief, neither the statute nor the SAA refer to the exporter of the merchandise. Pl.-Intervenor Florida Power & Light Co.'s Rule 56.2 Mot. for J. on the Agency R. 20, ECF No. 38 ("FPL Br."). Rather, the focus is on the merchandise itself and the process that occurred in the third

2

country to assemble or complete that merchandise. The question is not whether "BYD circumvented" the orders, but whether *the merchandise* exported by BYD circumvented the orders. By focusing on BYD rather than the merchandise and the processing that occurred in Cambodia to produce that merchandise, Commerce's analysis failed to comport with the statute. That erroneous interpretation of the statute also contributed to the additional errors described below.

## II.    DEFENDANT FAILS TO SHOW THAT COMMERCE REASONABLY FOUND THAT THE PROCESS OF ASSEMBLING OR COMPLETING CSPV CELLS AND MODULES IN THAILAND WAS MINOR

### A.    Defendant Fails to Show How Commerce's Findings Supported Its Ultimate Conclusion

In their opening briefs, both BYD and FPL highlighted numerous findings by Commerce regarding the significance of the processing that occurred in Cambodia that were fundamentally inconsistent with Commerce's overall conclusion that the processing in Cambodia was minor. *See, e.g.*, Mem. in Supp. of Mot. for J. on the Agency R. of Pl. BYD (H.K.) Co., Ltd. 13-15, 37-39, 53-54, ECF No. 36; FPL Br. 12-17. Defendant does not grapple with any of those facts. Instead, Defendant argues that "BYD did not incur any investment, R&D expenses, or

3

maintain any production facilities," and emphasizes the importance of R&D in the solar industry. Def. Br. 14-15. As explained elsewhere in this brief, Commerce erred by focusing solely on BYD rather than on the production processes (and their associated investments, R&D, and production facilities) in Cambodia. Commerce's findings flowing from its fundamentally flawed inquiry with respect to those factors cannot negate the many findings that Commerce made elsewhere in its Decision Memo establishing that the process of assembly or completion in Cambodia was anything but "minor or insignificant."

Defendant otherwise makes an illogical argument that Commerce considered the factors listed under 19 U.S.C. § 1677j(b)(2) and that this somehow renders irrelevant the dictionary definitions of "minor" and "insignificant" and the illustrative example of what those terms mean in the SAA. Def. Br. 16-17. But the terms "minor" and "insignificant" are not defined by 19 U.S.C. § 1677j(b)(2). Rather, the factors in 19 U.S.C. § 1677j(b)(2) are simply to be "take{n} into account" when Commerce determines whether the processing is "minor or insignificant." The ultimate inquiry is whether the processing is "minor or insignificant," and the plain meaning of those words do not

encompass the extensive and sophisticated processing that Commerce found was required to complete or assemble CSPV cells and modules in Cambodia. That is true regardless of whether BYD itself engaged in R&D, made investments in Cambodia, or had its own production facilities.

> **B.**   **Defendant Fails to Show that Commerce Permissibly Ignored the Investments and Production Facilities of BYD's Tollers**

As explained above, the focus of the statutory inquiry is on the "process of assembly or completion in the {third} country." 19 US.C. § 1677j(b)(1). For the reasons explained in BYD's reply brief, Defendant's contention that Commerce lawfully and reasonably excluded from its analysis the investments and facilities of BYD's tollers is meritless. BYD Reply 9-16. FPL wishes to further highlight two points with respect to this issue.

First, Defendant explicitly states that "Commerce found that BYD did not directly engage in the production of solar cells in Cambodia." Def. Br. 8. As this Court has observed, "the statute equates 'completion or assembly' with 'production process.'" *HLDS (B) Steel SDN BHD v. United States*, No. 21-00638, 2024 WL 244937, at *4 (Ct. Int'l Trade

Jan. 23, 2024). Defendant cannot legitimately defend Commerce's determination to focus solely on the activities of BYD to analyze the process of assembly or completion (i.e., the "production process") when BYD is not engaged in the production process.

As FPL explained in its opening brief, Commerce was aware that BYD used tollers to produce CSPV cells and modules before Commerce selected BYD as a mandatory respondent. FPL Br. 24. In order to conduct an inquiry that actually considered the "process of assembly or completion" in Cambodia, Commerce had two choices: (i) it could select only producers as mandatory respondents; or (ii) it could collect and consider the necessary information from a non-producing respondent's suppliers or tollers to fully analyze the production process in Cambodia. What Commerce could not lawfully do to analyze the production process in Cambodia was select a non-producing exporter and refuse to consider the information of the companies that actually produced the merchandise. The fact that Commerce did not formally decide to ignore the information of the toller's until the preliminary determination is irrelevant. *See* Def. Br. 22. Commerce knew of the issue well before then, and then chose to proceed down a path that would render it

impossible for Commerce to examine the statutory factors in a way that would be supported by substantial evidence by selecting BYD as a mandatory respondent and ignoring the data it received regarding the companies actually producing the merchandise (BYD's tollers). Having selected BYD as a mandatory respondent, Commerce was required to consider the information of BYD's tollers. Commerce's failure to do so was unlawful and rendered its decision unsupported by substantial evidence.

Second, requiring Commerce to consider the information of BYD's tollers would not require Commerce to "assess the level of investment, level of R&D, and production facilities underpinning all goods and services acquired from unaffiliated sellers in the third country." Def. Br. 18. The statute requires Commerce to analyze the "process of assembly or completion" of the "imported merchandise." 19 US.C. § 1677j(b)(1)(B)-(C). Defendant itself describes the basics of that process for CSPV cells and modules in its brief. Def. Br. 7-8. The reason Commerce was required to consider the investments and facilities of BYD's tollers is because those companies were engaged in that process. Requiring Commerce to consider the information of the companies that produce

CSPV cells from polysilicon wafers and that assemble cells into modules, *see* Def. Br. 7-8, would not require Commerce to consider the information for companies that produce just aluminum frames, or backsheets, or glass. Those companies are not producing CSPV cells and modules. But BYD's tollers did, which is why Commerce was required to consider their investments and facilities in order to properly analyze the process of assembling or completing CSPV cells and modules in Cambodia.

> ### C. Defendant Fails to Show that Commerce's Elevation of the R&D Factor Was Reasonable

Defendant highlights the supposed importance of R&D, upon which "Commerce placed particular emphasis," as supporting Commerce's overall conclusion that the processing in Cambodia was minor or insignificant. Def. Br. 13-15. But when R&D is fungible and can be separated temporally and geographically from the action of completing or assembling the merchandise, which is what Commerce found in this case, *see* Decision Memo, Appx1223, the R&D factor provides little, if any, probative value as to whether the "process of assembly or completion" in a particular locale is minor or insignificant.

It bears repeating that Commerce in fact has recognized that the R&D factor is a less probative factor than the nature of the production process and the value added because R&D is not directly related to the actual process of assembly or completion. Specifically, Commerce has stated that:

> {T}he factors involving the level of investment, the level of R&D, and the extent of the production facilities in {the third country} weighed less heavily in our determination than the factors involving the nature of the production process and the value added in {the third country} because the former relate more broadly to the companies and their facilities, *whereas the latter relate more to the production of inquiry merchandise itself.*

*Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Final Affirmative Determinations of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand*, 88 Fed. Reg. 82,824 (Nov. 27, 2023), and accompanying Issues and Decision Memorandum with Respect to Korea at 32 (emphasis added). Defendant attempted to distinguish the industries at issue in two prior cases where Commerce found R&D to be unimportant, Def. Br. 14-15, but as BYD observed, Defendant conspicuously failed to address *Aluminum Foil from China*. BYD Reply 22-23. Defendant offers no explanation as to how Commerce's *Final*

*Determination* comports with Commerce's own recognition in *Aluminum Foil from China* that the R&D factor provides only limited probative value as to whether the "process of assembly or completion" is minor or insignificant.

Similarly, Defendant ignores that the "nature of the production process" is inherently more probative of whether the "process of assembly or completion" is minor or insignificant, which Commerce also acknowledged in *Aluminum Foil from China*. This Court also recently explained that "the statute equates 'completion or assembly' with 'production process.'" *HLDS (B) Steel*, 2024 WL 244937, at *4. Given that the "nature of the production process" is the only factor in 19 U.S.C. § 1677j(b)(2) that is focused directly on the actual "process of assembly or completion," it logically is more informative of whether that process is minor or insignificant. Especially given that R&D in the solar industry can be geographically and temporarily separated from when and where production occurs, Commerce arbitrarily departed from its past determinations and acted unreasonably in concluding that the lack of R&D in Cambodia was somehow more informative of whether "the process of assembly or completion" in Cambodia was minor or

10

insignificant than the numerous findings that Commerce made regarding the actual process itself.

D.    Defendant Fails to Show that the Value Added in Cambodia Was Small

Defendant mischaracterizes BYD's and FPL's arguments regarding the value of processing performed by BYD's tollers as asking Commerce to "double-count the nature of the production process" by including that factor in Commerce's consideration of the value added in Cambodia. Def. Br. 24-25. Considering the qualitative value added is not the same as considering the nature of the production process. A process could be complex yet result in only relatively minor changes to the product. Conversely, a relatively simple process could result in a significant change in the product, like adding vinegar to baking soda. As BYD and FPL explained in their opening briefs, not only was the nature of the production process employed by BYD's tollers significant, but the change in the product itself was significant as well. The utility and functionality of a product is certainly a measure of value. *See, e.g.*, *Value*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/value (last visited Jan. 9, 2025) (defining value

as both "the monetary worth of something" and "relative worth, utility, or importance").[2] Significantly improving a product's utility or functionality thus constitutes adding significant value.

Because the statute does not set forth a rigid formula for determining whether a particular quantitative value-added percentage is "small," a qualitative assessment provides essential context for making that determination. As Defendant concedes, Commerce's prior determinations are inconsistent when only the value-added percentages are considered. Def. Br. 29. If Commerce is not going to establish specific cut-offs for what constitutes a "small" proportion, incorporating a qualitative assessment of value added is the only way for Commerce to avoid arbitrary decision-making in deciding whether a value added of X percent is "small" when it is only one or two percentage points more or less than value-added percentages Commerce found to be not "small" in other cases. Employing such a qualitative assessment, as Commerce has done in past proceedings, allows Commerce to make reasoned judgments as to whether the value-added percentage in a particular case should be considered small. Commerce acted arbitrarily in failing

---

[2] A copy of this webpage is provided in Attachment A.

to follow that practice or to otherwise articulate a reasoned explanation for why the value added in Cambodia was small despite Commerce previously finding that similar, and even lower, value-added percentages are not small.

## CONCLUSION

For the reasons discussed above and in BYD's reply brief, Defendant has not shown that Commerce's *Final Determination* is supported by substantial evidence or otherwise in accordance with law. Accordingly, this Court should grant Plaintiffs' Rule 56.2 Motions.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street N.W.
Washington, DC 20006
Phone: (202) 887-4046
E-mail: mnicely@akingump.com
*Counsel for Florida Power & Light Company*

Dated: January 9, 2025

13

<u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel at Akin Gump Strauss Hauer & Feld LLP hereby certify that the foregoing Reply Brief in Support of Plaintiffs' Motions for Judgment on the Agency Record, dated January 9, 2025, complies with the word-count limitation set forth in the Court's May 24, 2024, Scheduling Order. The memorandum of law contains 2,325 words according to the word-count function of the word-processing software used to prepare the memorandum.

Respectfully submitted,

<u>/s/ Matthew R. Nicely</u>
Matthew R. Nicely
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street N.W.
Washington, DC 20006
Phone: (202) 887-4046
E-mail: mnicely@akingump.com
*Counsel for Florida Power & Light Company*

Dated: January 9, 2025

ATTACHMENT A

< value                                                                    ✕

Dictionary                                            Thesaurus

# value  1 of 3  **noun**

val·ue  ˈval-(ˌ)yü 🔊

Synonyms of *value* >

1   : the monetary worth of something : **MARKET PRICE**

2   : a fair return or equivalent in goods, services, or money for something exchanged

3   : relative worth, utility, or importance
      a good *value* at the price
      the *value* of base stealing in baseball
      had nothing of *value* to say

4   : something (such as a principle or quality) intrinsically valuable or desirable
      sought material *values* instead of human *values*
      – W. H. Jones

5   : a numerical quantity that is assigned or is determined by calculation or measurement
      let *x* take on positive *values*
      a *value* for the age of the earth

6   : the relative duration of a musical note

7  **a** : relative lightness or darkness of a color : **LUMINOSITY**

   **b** : the relation of one part in a picture to another with respect to lightness and darkness

8   : **DENOMINATION sense 2**

          ˈval-(ˌ)yü-ləs 🔊  -yə-  **adjective**

                    **noun**

# value  2 of 3  **verb**

**valued; valuing**

*transitive verb*

1   : to consider or rate highly : **PRIZE, ESTEEM**
      *values* your opinion

<

Dictionary                                                    Thesaurus

var·ye·wer    noun

# value   3 of 3   adjective

: of, relating to, or being a brand of inexpensive products marketed as an alternative to other, more expensive brands

consumers choosing between premium brands and *value* brands

As the economic downturn set in, *value* products have been "legitimized," leading rich and poor alike to buy them.

— Andrea Felsted

**Noun**

valuation                                    worth

**Verb**

appreciate                                   cherish

love                                         prize

treasure

See all Synonyms & Antonyms in Thesaurus ›

## Choose the Right Synonym for *value*

**ESTIMATE**, **APPRAISE**, **EVALUATE**, **VALUE**, **RATE**, **ASSESS** mean to judge something with respect to its worth or significance.

**ESTIMATE** implies a judgment, considered or casual, that precedes or takes the place of actual measuring or counting or testing out.

*estimated* the crowd at two hundred

**APPRAISE** commonly implies the fixing by an expert of the monetary worth of a thing, but it may be used of any critical judgment.

having their house *appraised*

**EVALUATE** suggests an attempt to determine relative or intrinsic worth in terms other than monetary.

*evaluate* a student's work

**VALUE** equals **APPRAISE** but without implying expertness of judgment.

‹

| Dictionary | Thesaurus |

**ASSESS** implies a critical appraisal for the purpose of understanding or interpreting, or as a guide in taking action.

officials are trying to *assess* the damage

**APPRECIATE**, **VALUE**, **PRIZE**, **TREASURE**, **CHERISH** mean to hold in high estimation.

**APPRECIATE** often connotes sufficient understanding to enjoy or admire a thing's excellence.

*appreciates* fine wine

**VALUE** implies rating a thing highly for its intrinsic worth.

*values* our friendship

**PRIZE** implies taking a deep pride in something one possesses.

Americans *prize* their freedom

**TREASURE** emphasizes jealously safeguarding something considered precious.

a *treasured* memento

**CHERISH** implies a special love and care for something.

*cherishes* her children above all

## Noun

The company's stock continues to decline in *value*.

Real estate prices have doubled in *value* over the last decade.

The difference in *value* between the two currencies is not significant.

**See More ⌄**

## Recent Examples on the Web

ⓘ **Examples are automatically compiled from online sources to show current usage.** Read More

### Noun

Jack Nelson, an art faculty member with a strange obsession with the moon, encouraged artists to measure the *value* of work by the level of risk taken, creating an environment that was just what Bill needed.

— David A. Ross, *Artforum*, 1 Jan. 2025

‹

Dictionary                                                                    Thesaurus

**Verb**

That potential growth was the lure for Swedish private equity fund EQT to lead a $1 billion investment into Flix in July, ***valuing*** the company at $3.4 billion.

— Iain Martin, *Forbes*, 2 Jan. 2025

The building and parking lot are ***valued*** at about $1.7 million according to Colliers.

— Ricardo Torres, *Journal Sentinel*, 1 Jan. 2025

### Adjective

Techno-optimists appear to ignore the fact that these tools are ***value*** neutral; there is nothing inherently pro-democratic about them.

— Ian Bremmer, *Foreign Affairs*, 21 Oct. 2010

Ask them to look at their daily, repetitive tasks or those that are a non-***value*** add.

— Steve Smith, *Forbes*, 20 Sep. 2021

> **See all Example Sentences for *value*** ›

## Etymology

**Noun**

Middle English, "worth, high quality," borrowed from Anglo-French, noun derivative from feminine of *valu* (going back to Vulgar Latin *\*valūtus*), past participle of *valer, valeir* "to be worth, have value," going back to Latin *valēre* "to be well, have strength" — more at WIELD

**Verb**

Middle English *valuen*, borrowed from Anglo-French *valuer* "to estimate, be worth," verbal derivative of *value* VALUE entry 1

## First Known Use

**Noun**

14th century, in the meaning defined at sense 1

**Verb**

15th century, in the meaning defined at sense 2a

**Adjective**

1986, in the meaning defined above

Dictionary                                    Thesaurus

absolute value                          actual cash value

at face value                           book value

breakup value                           characteristic value

counter-value                           critical value

entertainment value                     expected value

face value                              fair market value

**See More** ⌄

valuator
**value**
value-added

See More Nearby Entries ›

Style   [ MLA ]

"Value." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/value. Accessed 9 Jan. 2025.

📋 Copy Citation

‹

| Dictionary | Thesaurus |

# value  1 of 2  noun

val·ue  ˈval-yü 🔊

**1** : a fair return in goods, services, or money for something exchanged

**2** : the amount of money something is worth

**3** : worth, utility, or importance in comparison with something else

**4** : a numerical quantity that is assigned or is found by calculation or measurement
   find the *value* of *x*

**5** : the length of time a musical note is to be held

**6** : the lightness or darkness of a color

**7** : something (as a belief) that is valuable or desirable

   -yü-ləs 🔊  -yə-  **adjective**

# value  2 of 2  verb

**valued; valuing**

**1** : to estimate the worth of
   was *valued* at $200

**2** : to think highly of
   *values* your advice

   -yə-wər  **noun**

# value  1 of 2  noun

val·ue  ˈval-yü 🔊

‹

Dictionary                                                          Thesaurus

**2** : monetary worth

*especially* : **MARKET VALUE**

**adjective**

# value   2 of 2   **transitive verb**

**valued; valuing**

: to estimate or determine the monetary value of

Nglish: Translation of *value* for Spanish Speakers
Britannica English: Translation of *value* for Arabic Speakers
Britannica.com: Encyclopedia article about *value*

Last Updated: 4 Jan 2025 - Updated example sentences

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

Dictionary          Thesaurus



## Can you solve 4 words at once?

Play



**WORD OF THE DAY**

# excursion

See Definitions and Examples »

Get Word of the Day daily email!

Your email address          SUBSCRIBE

**31 Useful Rhetorical Devices**

**Using Bullet Points ( • )**

**'Gray' vs. 'Grey': What is the difference?**

What's the difference between 'fascism' and 'socialism'?

See All

Terroir, Oenophile, & Magnum: Ten Words About Wine

8 Words for Lesser-Known Musical Instruments

10 Words from Taylor Swift Songs (Merriam's Version)

9 Superb Owl Words

15 Words That Used to Mean Something Different

See All

‹

**Dictionary**                                     Thesaurus



**Quordle**
Can you solve 4 words at once?

Play

**Blossom Word Game**
Pick the best words!

Play

**Missing Letter**
A daily crossword with a twist

Play

**Little Words, Big Vocabulary Quiz**
Time to sweat the small stuff.

Take the quiz

Learn a new word every day.
Delivered to your inbox!

Your email address

SUBSCRIBE

Dictionary                                          Thesaurus